Luis Felicier, menor representado por su padre natural con patria potestad Jacobo Felicier, demandante y apelado, *v.* Rafael Domínguez, demandado y apelante.

Núm. 8057.—*Sometido:* Febrero 12, 1940. *Resuelto:* Marzo 8, 1940.

*Villamil & Santana Becerra,* abogados del apelante; *Faustino R. Aponte,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El presente es un caso sobre daños y perjuicios en el que se dictó sentencia condenando al demandado a pagar al demandante mil quinientos dólares con más las costas y trescientos dólares por honorarios de abogado, en que el demandado apeló y en que el demandante solicita la desestimación del recurso por frívolo, con imposición de costas y honorarios de abogado.

Los autos de la apelación quedaron radicados desde agosto 21, 1939. El apelante solicitó varias prórrogas y finalmente presentó su alegato en noviembre 30, 1939. La moción de desestimación se archivó en diciembre 16 siguiente y se vió con asistencia e informe de los abogados de ambas partes el 12 de febrero último.

En la demanda se alega, en resumen, que el demandante tiene seis años de edad; que el demandado es un porteador público entre Humacao y la Central Pasto Viejo de esa ciudad que tiene en servicio varias guaguas que manejan sus empleados; que el 6 de abril de 1937 el demandante, frente a la tienda de la Central, se subió en el estribo de una de dichas guaguas que iba con dirección a la factoría de la misma, y que debido al manejo descuidado de la guagua por parte del empleado del demandado que negligentemente permitió al demandante viajar en el sitio indicado, el demandante fué lanzado a la carretera sufriendo la fractura de su pierna derecha.

En su contestación el demandado aceptó que el accidente había ocurrido pero negó que se debiera a su negligencia, debiéndose por el contrario a la "propia incuria e intrusión" del demandante "al actuar en contra de la ley y del natural instinto de la propia conservación, agarrándose a la parte derecha lateral trasera de la guagua, zafándose al suelo, todo

lo que sucedió sin que el *chauffeur,* ni ningún otro empleado del demandado, se hubiera podido dar cuenta, ya que, además de que el intruso actuaba a hurtadillas, las cortinas de la guagua venían puestas contra la intemperie, pues momentos antes había empezado a lloviznar.''

Fué el pleito a juicio y la corte apreció la prueba practicada, como sigue:

''La prueba del demandante tiende a establecer los siguientes hechos:—que el demandado era para la fecha del accidente dueño de la guagua P. 590; que esta guagua el día 6 de abril de 1937 se dedicaba al transporte de pasajeros de Humacao a la Central Pasto Viejo; que dicha guagua era manejada ese día por el chófer Benito Rivera, quien era un empleado del demandado; que el chófer Benito Rivera, en el viaje de Humacao a la Central Pasto Viejo, se paró frente a una tienda y llamó al niño Luis Felicier para que le llevara un periódico a una persona; que después de haber llevado el periódico por orden del chófer se montó en el estribo de la guagua; que momentos antes del accidente, el niño estaba jugando con unos amiguitos; que en el estribo de la guagua, además del niño Luis Felicier, iban otras personas; que el niño se cayó del estribo y alguien gritó al chófer para que parara la guagua; que el niño estuvo más de 30 días en el Hospital de Humacao como consecuencia del accidente; que después de haber salido del Hospital estuvo 2 meses más enfermo y 6 meses andando con muletas; que el demandante ha sufrido daños y perjuicios que estima en la suma de $5,000.

''La prueba del demandado tiende a demostrar los siguientes hechos: que el niño Luis Felicier iba colgado de la guagua que guiaba Benito Rivera por su parte derecha trasera; que el sitio del cual podía agarrarse el niño quedaba a una altura de cinco a seis pies; que nadie iba parado en el estribo de la guagua; que el accidente se debió a descuido y negligencia del menor Luis Felicier; que el chófer no se percató de que el niño fuese agarrado de la guagua; que las cortinas de la guagua se habían bajado porque estaba lloviendo; que la guagua fué reparada después del accidente y su altura se elevó ocho pulgadas más.

''Del examen que la Corte hizo de la guagua, ésta fué medida en el frente, en el medio y en la parte trasera. A juicio del Tribunal la única cuest'ón a resolver es si el accidente ocurrió tal como alega el demandante o como alega el demandado. Con respecto a la ocurrencia del mismo no hay discrepancia entre las partes. El deman-

dado admite que el accidente ocurrió en la fecha y lugar a que se contraen los hechos. El demandante sostiene que el accidente se debió a la negligencia y descuido del chófer al permitir que un niño de siete años de edad, poco más o menos para la fecha del accidente, corriese en la guagua montado sobre el estribo de la misma. El demandado, sin embargo, sostiene que aquél se debió única y exclusivamente al hecho de haberse agarrado el niño de la parte trasera derecha de la guagua sin que el chófer, ni ningún otro empleado del demandado, ni ninguna persona que viajara en la misma, se percatara de la presencia del niño o del hecho de ir agarrado. El Tribunal ha examinado detenidamente el testimonio de los testigos, tanto de la parte demandante, como de la parte demandada. Considera que por la forma en que han declarado los testigos del demandante, por la lógica de sus declaraciones y por lo razonable de las mismas, le merecen más crédito que el testimonio de los testigos del demandado. Hay un hecho que viene a robustecer esta creencia, y es el tamaño de la guagua en relación con el niño. Se trata de una criatura que para la fecha del accidente, juzgando por el tamaño que tiene hoy, escasamente tenía una altura de más de tres pies. La guagua no tiene nada en el lado derecho sobre el cual pudiera encaramarse este niño para sujetarse de la varilla que tiene la misma a una altura de cinco a seis pies. Era imposible que un niño de esa altura, con una guagua en marcha o parada, pudiera agarrarse de un objeto que no estaba a su alcance. Lo más probable es que se subiera al estribo de la misma y que de allí se zafara mientras la guagua caminaba por la carretera. Todavía resulta menos probable que ese niño se hubiese agarrado de la varilla que corre horizontalmente en la guagua si ésta tenía las cortinas bajas. Indudablemente, después de haber llevado a cabo el mandado que le dió el chófer cual era el de llevar un periódico a una persona, y estando lloviendo, el niño se guareció dentro de la guagua, parándose en el estribo de la misma.

"Opina la Corte que el demandante ha probado las alegaciones de su acción, estimando el Tribunal que el demandante ha sufrido daños y perjuicios en la suma de $1,500.

"Por las razones expuestas, la Corte declara con lugar la demanda y condena al demandado a satisfacer al demandante la cantidad de $1,500, con más las costas y $300 por concepto de honorarios de abogado."

En su alegato el demandado apelante señala como único error el cometido a su juicio por la Corte sentenciadora "al

considerar la evidencia del demandante suficiente para sostener la demanda.''

■ Argumentando el señalamiento analiza las declaraciones de los testigos del demandante y hace inteligentes esfuerzos por demostrar su insuficiencia. También impugna el razonamiento del juez sentenciador.

Conocemos dicho razonamiento. Resiste a nuestro juicio la impugnación. En cuanto a lo declarado por los testigos del demandante, parece conveniente extractar de sus testimonios lo que sigue:

Dijo el propio demandante:

''P.—¿Quién es don Beno?—R.—El que guía la guagua, me llamó para llevarle un periódico a don Paco Monge, y yo se lo fuí a llevar y después la guagua se quedó allí apeando las compras y yo me monté en la guagua y después la guagua se cayó dentro de un hoyo y yo me caí.—P.—¿En qué se montó Ud.?—R.—En el estribo.—P.—¿Eso fué después de Ud. haber llevado el periódico?—R.—Sí, señor.—P.—¿Para dónde iba Ud.?—R.—Que don Beno me dijo que montara.—P.—¿Y siguió en la guagua Ud.?—R.—Sí, señor, don Beno me dijo que me iba a llevar a los Sapos.''

Carlos Alicea depuso:

''El chófer llamó a este niño para que le llevara un periódico al taller de carpintería que queda al lado de la vía y entonces vino el muchacho y el chófer le dió el periódico.—P.—¿No vió cuando el niño se montó en la guagua?—R.—Sí, señor, ví cuando se montó en la guagua y siguió.''

Y luego:

''P.—¿Ud. recuerda el pasaje que llevaba la guagua.—R.—Bueno, llevaba bastante pasaje, llevaba exceso de pasaje.—...—P.—¿Y qué hizo él?—R.—Se fué en la guagua.—P.—¿Ud. lo vió montarse?—R.—Lo ví parado en el estribo.—...—P.—¿La guagua ésa del demandado, para esa fecha tenía cobrador?—R.—No, señor, no tenía.''

Américo Ramírez, corrobora su testimonio, así:

''P.—¿Iban personas de pie?—R.—Sí, señor.—P.—¿Y en el estribo venían algunas personas?—R.—Sí, señor.—P.—¿Había personas en el estribo?—R.—Sí, señor.''

Y Julio Casado y Ramón Colón manifestaron, el primero:

"P.—¿Qué guagua?—R.—Una guagua que guiaba don Beno.— P.—¿Benito Rivera?—R.—Sí, señor. Y sé que iba este nene (señalando a Luis Felicier) montado en el estribo e iban dos o tres más montados allí.—P.—¿De manera que, al pasar la guagua, Ud. vió a este niñito Luis Felicier montado en el estribo?—R.—Sí, señor."

Y el segundo:

"Pues estando yo parado al frente del portón, a la entrada de la factoría de Pasto Viejo, estando yo de frente hacia donde venía la guagua, vi caerse el muchacho.—P.—¿A quién se refiere Ud. cuando dice el muchacho?—R.—A Luis Felicier.—P.—¿Lo vió caer de dónde?—R.—De la guagua.—P.—¿De la guagua a dónde?—R.—Al suelo.—P.—¿A la carretera?—R.—Sí, señor.—P.—¿Y qué más sabe Ud. si sabe algo más?—R.—Entonces yo corrí hacia el sitio donde cayó el niño y le grité a Benito que parara la guagua.—P.—¿Benito era el chófer de la guagua?—R.—Sí, señor.—Y yo seguí corriendo y levanté el muchacho del suelo y lo llevé hacia la clínica."

Por último, el padre del demandante dijo:

"P.—¿Él estuvo en el hospital?—R.—Estuvo treintiséis (36) días.—P.—¿En el Hospital Municipal de Humacao?—R.—Sí, señor.— P.—¿Ud. lo visitaba con frecuencia?—R.—Todos los días y todas las noches. De noche yo y de día la madre.—...—P.—¿Cuánto tiempo estuvo en la casa?—R.—Como tres (3) meses en casa, con paños de agua tibia y después estuvo como seis meses andando con muletas.— P.—¿El niño, después de ese día, se quejaba de dolores?—R.—Sí, señor.—P.—¿Mientras estuvo en el hospital se quejaba?—R.—Sí, señor.—P.—¿Y después que Ud. se lo llevó para su casa, se siguió quejando?—R.—Se quejaba muchísimo allá acostado; estuvo dos meses acostado en cama en la casa y como seis meses que estuvo andando con muletas."

La fractura quedó comprobada además por una radiografía y las dimensiones de la guagua a que hace referencia el juez sentenciador constan del acta de inspección ocular.

Difícil es generalmente la apreciación de la evidencia en estos casos por la tendencia a la exageración que se observa en las declaraciones de una y otra parte, pero creídos como fueron los testimonios presentados por el demandante sin

que haya la más leve indicación de que la corte actuara movida por pasión, prejuicio o parcialidad, ni cometiera manifiesto error, son dichos testimonios, a nuestro juicio, suficientes para concluir que quedaron probadas en el juicio las alegaciones de la demanda y que las sumas en que la corte fijó el montante de la indemnización y los honorarios de abogado no son excesivas.

En su consecuencia la desestimación procede, sin que deba accederse a la imposición de costas y honorarios de la apelación que solicita el apelado porque si bien hemos llegado a la conclusión de que la apelación no podría prosperar por falta de méritos, ello no implica la temeridad de la parte al interponerla ya que pudo creer de buena fe, y su argumentación en su alegato tiende a demostrarlo así, que la razón le asistía.

*Por virtud de todo lo expuesto debe desestimarse, por frívolo, el recurso, y confirmarse la sentencia apelada.*